# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

**QUVONDO MARTA THROWER,**
**ADC #153192**                                                         **PLAINTIFF**

**V.**                          **CASE NO. 5:18-cv-172-DPM-BD**

**WENDY KELLEY, et al.**                                               **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.      Procedures for Filing Objections

This Recommended Disposition ("Recommendation") has been sent to Judge D. P.

Marshall Jr. Any party may file written objections to this Recommendation. Objections

should be specific and should include the factual or legal basis for the objection. To be

considered, objections must be received in the office of the Court Clerk within 14 days of

this Recommendation.

If no objections are filed, Judge Marshall can adopt this Recommendation without

independently reviewing the record. By not objecting, parties may waive their right to

appeal.

### II.     Background

Plaintiff QuVondo Thrower, an inmate in the Arkansas Department of Correction,

filed this lawsuit without the help of a lawyer under 42 U.S.C. § 1983. (Docket entry #1)

Mr. Thrower filed his complaint on July 2, 2018, alleging that Defendants Kelley, Shores,

Powell, Maples, Watson, and Griffith used excessive force against him and failed to

protect during a hostage stand-off at the prison on November 24, 2017. (#2)

Mr. Thrower has filed an unsupported motion for summary judgment on the

merits, reasserting his allegations against the Defendants (#19); and they have responded.

(#22) Defendants have filed their own motion for summary judgment based on Mr.

Thrower's alleged failure to exhaust his administrative remedies. (#24) Mr. Thrower has

responded to that motion. (#28) The motions are ripe for review.

## III.   Exhaustion

The Prison Litigation Reform Act requires the Court to dismiss any claim raised in

a 42 U.S.C. § 1983 lawsuit such as this if the claim was not fully exhausted prior to the

date the complaint was filed. See 42 U.S.C. § 1997e(a) ( "No action shall be brought with

respect to prison conditions . . . by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted");

*Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies

"means using all steps that the [prison] holds out, and doing so properly"); *Johnson v.

Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available

administrative remedies before filing suit, and "[i]f exhaustion was not completed at

the time of filing, dismissal is mandatory").

There are exceptions to the requirement, but they are few. For example, an

inmate's misunderstanding about the exhaustion process or subjective belief as to the

futility of the process are irrelevant in determining whether administrative procedures

were available to the inmate. See *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

2

That said, the law requires exhaustion only of "such administrative remedies as are available." 42 U.S.C. § 1997e(a). The availability of a remedy, according to the Supreme Court, is about more than just whether an administrative procedure is "on the books." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). An administrative remedy is "not capable of use," and is deemed unavailable, for example, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1859–60.

Under the current law, Defendants bear the burden of proving non-exhaustion. *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (citing *Jones v. Bock*, 549 U.S. 199, 211-12 (2007)) (Non-exhaustion is an affirmative defense; thus, defendants have the burden of raising and proving the absence of exhaustion.)

## IV.   Discussion

During all times relevant to this lawsuit, Administrative Directive ("AD") 14-16 was in effect. (#24-2) Under AD 14-16, inmates must fully exhaust their administrative remedies as to all defendants before filing a § 1983 lawsuit. (*Id*. at 17-18)

Inmates must first file a unit level grievance form within fifteen days of the underlying incident. (*Id*. at 5) The unit level grievance form must contain a statement that "is specific as to the substance of the complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (*Id*. at 5-6) This form should be presented to a designated problem-solver or to any staff member holding the rank of sergeant or above. (*Id*. at 6) At this time, the staff

3

member must sign and date the form. (*Id.*) If the problem cannot be resolved, the

resolution attempt must be documented on the form, and the inmate may proceed to step

two using the same form within three days of receipt of the step one response. (*Id.* at 7-8)

At step two, the inmate must explain why the informal resolution was

unsuccessful. (*Id.* at 8) Upon receipt, the grievance officer transmits an acknowledgement

or rejection within five working days. (*Id.* at 9) If an inmate has not received a response

within twenty days, the inmate may move to the next level of the process by appealing to

the chief deputy/deputy/assistant director within five working days. (*Id.* at 10) If an

inmate has received a response from the warden and the inmate is not satisfied, he or she

may file an appeal within five working days to the chief deputy/deputy/assistant director.

(*Id.* at 11)

The chief deputy/deputy/assistant director will attempt to resolve the matter by

responding in writing within thirty working days, unless there was an extension, or the

appeal is rejected. (*Id.* at 11-12) A written decision or rejection of an appeal at this level

is the end of the grievance process. (*Id.* at 12)

Here, Defendants produce an affidavit of Terri Grigsby, the ADC inmate

grievance supervisor. (#24-1) Ms. Grigsby testifies that Mr. Thrower did not file a single

grievance regarding any alleged excessive force or failure-to-protect claims within fifteen

days of the November 24, 2017 incident, as required by AD 14-16. (*Id.*)

Mr. Thrower admits that he did not file any grievances regarding the November

24, 2017 incident, but argues that this failure should be excused. According to Mr.

4

Thrower, he was shot in the head and beaten so badly during the November 24 incident that he was not physically able to file a grievance. (#2, p.4-5) Such a circumstance might well excuse an inmate from the requirement to file a grievance within 15 days of an incident.

The problem for Mr. Thrower, however, is that the undisputed evidence proves otherwise. Defendants have offered two grievances that Mr. Thrower filed on December 7, 2017; that is, ten days after the November 27, 2017 incident. (#24-5, #25-6) In both grievances Mr. Thrower complains about a property loss during his transfer from the Maximum Security Unit. (#24-5, #25-6) These grievances establish that Mr. Thrower was aware of the grievance process and that he was physically able to avail himself of the prison's administrative process during the 15-day period after the November 24 incident.

The undisputed evidence shows that Mr. Thrower did not comply with the ADC's grievance procedure, as required by the PLRA and that there is no valid reason to excuse his failure to use the administrative process before filing his complaint in this lawsuit. Accordingly, Defendants are entitled to summary judgment.

## V.    Conclusion

The Court recommends that Mr. Thrower's motion for summary judgment (#19) be DENIED; that Defendants' motion for summary judgment (#24) be GRANTED; and that this case be DISMISSED, without prejudice.

5

DATED this 2nd day of November, 2018.

_____
UNITED STATES MAGISTRATE JUDGE